**HANDLEY INVESTMENT COMPANY,**
Petitioner,

v.

**SECURITIES AND EXCHANGE COM-
MISSION, Respondent.**

**No. 7978.**

United States Court of Appeals
Tenth Circuit.

Dec. 23, 1965.

Fred Gilbert, Tulsa, Okl. (Farmer, Woolsey, Flippo & Bailey, Tulsa, Okl., were with him on the brief), for petitioner.

Edward B. Wagner (Philip A. Loomis, Jr., Gen. Counsel, David Ferber, Sol., and Gus J. Bennett, Atty., S. E. C.), for respondent.

Before MURRAH, Chief Judge, and BREITENSTEIN and SETH, Circuit Judges.

BREITENSTEIN, Circuit Judge.

Petitioner Handley Investment Company seeks review of disciplinary action taken against it for the sale of securities at unfair prices.

Transactions in over-the-counter securities are governed by the Maloney Act of 1938 which added § 15A to the

Securities Exchange Act.[1] The statute provides for cooperative regulation through the registration with the Securities and Exchange Commission (SEC) of one or more "national securities associations." The National Association of Securities Dealers, Inc., (NASD) is the only association which has been so registered. It has adopted rules authorized by the statute and approved by SEC for protection of investors and the public interest.[2] The NASD Rules of Fair Practice provide in Art. III, § 1, that members "shall observe high standards of commercial honor and just and equitable principles of trade." Section 4 of the same Article says that in over-the-counter transactions if a member buys or sells for his own account he shall do so "at a price which is fair, taking into consideration all relevant circumstances, including market conditions with respect to such security at the time of the transaction, the expense involved, and the fact that he is entitled to a profit."

To aid its members in determining what is a price reasonably related to the current market price and what is a fair price, NASD conducted a survey which led to the adoption of the so-called "5% policy" in regard to mark-ups and spreads.[3] In its "interpretation of Sections 1 and 4, Article III of the Rules of Fair Practice with Respect to Mark-Ups" the Board of Governors of NASD noted that 71% of the transactions studied had a spread or mark-up of not over 5% and said that:

> "In the case of certain low-priced securities, such as those selling below $10.00, a somewhat higher percentage may sometimes be justified. On the other hand, 5 percent or even a lower rate is by no means always justified."

The statute requires that an association such as NASD have rules to provide for the discipline of its members charged with rule violations.[4] Disciplinary action was brought against petitioner, a broker and dealer in securities and a member of NASD, charging the sale of securities "at prices which were not reasonably related to the then current market prices, nor fair in view of all relevant circumstances." [5] Attached to the complaint was a schedule giving the details of 50 transactions concerning so-called penny stocks. The answer of petitioner denied none of the transactions, said that "more than normal expense" was incurred in connection therewith, alleged that an experienced employee no longer working for petitioner handled the transactions, and offered to return any amount which exceeded the price at which the securities should have been sold. The matter was set down for hearing before the District Business Conduct Committee of District No. 4 of NASD. Petitioner did not take advantage of the opportunity to appear before the Committee but submitted its case on its answer. The Committee found that in 44 transactions in which cost and market computations were available, 41 had a mark-up of "considerably more than 14% over cost." The Committee held that the transactions reflected petitioner's "unquestionable disregard of NASD 5% policy," fined petitioner $1,000, and suspended it from NASD for 90 days.

Petitioner appealed to the NASD Board of Governors which, after hearing at which petitioner appeared and presented evidence, affirmed the District Committee. On an application to review [6] the SEC affirmed the action taken in regard to the mark-ups contrary to the 5% policy. Review is now sought in this court pursuant to 15 U.S.C. § 78y(a).

---

1. 15 U.S.C. § 78o–3.

2. 15 U.S.C. § 78o–3(b), (j), and (k).

3. See National Association of Securities Dealers, Inc., 17 S.E.C. 459, 473.

4. 15 U.S.C. § 78o–3(b) (8) and (9).

5. The complaint also charged net capital deficiencies but on this item SEC held in favor of petitioner and we are not now concerned with it.

6. See 15 U.S.C. § 78o–3(h) (1).

The petitioner does not dispute the facts respecting the transactions on which the findings of excessive mark-up were made. In its opinion the SEC commented that the mark-ups "averaged about 25% and ranged up to 57.9%." The argument that dollar amounts rather than percentages should have been considered is not persuasive because the record shows no adjustment of the mark-ups by dollar amounts. In the smallest transaction, one of $40, the mark-up was 18.5% and in the largest, one of $1,000, the mark-up was 23%.

Petitioner's brief and oral argument cover a wide range of constitutional principles and legal philosophy, the pertinence of which is obscure. The lengthy dissertation on the standards applicable to a determination of the sufficiency of the evidence does not impress us because the use of any of those standards produces the same result—a violation of the NASD Rules of Fair Practice by excessive mark-ups.

 The due process arguments of petitioner are hard to understand. The requirements of procedural due process were fully met. On the substantive side the contentions appear to be that the NASD rules fail to satisfy the due process requirements for definite standards and the application of the rules to petitioner deprives it of the right to engage in the securities business. Little need be said about either. The statement of the 5% policy establishes sufficient guidelines. The application of that policy to penny stocks poses no problem when, as here, the SEC finds that the mark-ups were excessive.[7] A substitution of moral or ethical standards, as suggested by petitioner, would produce the vagueness which it says violates due process. The lengthy discussion of the right of the petitioner to engage in the securities business was adequately answered by our decision in Associated Securities Corp. v. Securities and Exchange Commission, 10 Cir., 283 F.2d 773, 775, and we see no need to amplify the views there expressed.

Absent constitutional or statutory infirmities, none of which appear here, the professional standards established by NASD and SEC for those engaging in over-the-counter securities business will not be upset by the courts. Petitioner failed to abide by those standards. The disciplinary action taken was not excessive, oppressive, or an abuse of discretion.[8]

The petition for review is denied.

---

7. See Samuel B. Franklin & Co. v. Securities and Exchange Commission, 9 Cir., 290 F.2d 719, 725, certiorari denied 368 U.S. 889, 82 S.Ct. 142, 7 L.Ed. 2d 88.

8. See Nassau Securities Service v. Securities and Exchange Commission, 2 Cir., 348 F.2d 133, 136.