**HAGEN INVESTMENTS, INC. and Edward J. Hagen, Appellants,**

v.

**SECURITIES AND EXCHANGE COMMISSION, Appellee.**

**No. 71–1658.**

United States Court of Appeals, Tenth Circuit.

June 9, 1972.

George F. Saunders, Oklahoma City, Okl., for appellants.

Harvey L. Pitt, Sp. Counsel, S. E. C. (G. Bradford Cook, Gen. Counsel, David Ferber, Sol., and David J. Romanski, Atty., S. E. C., on the brief), for appellee.

Before LEWIS, Chief Judge, and KILKENNY * and DOYLE, Circuit Judges.

WILLIAM E. DOYLE, Circuit Judge.

Before us are petitions for review of an order of the Securities and Exchange Commission dismissing review proceedings of a decision rendered by the Board of Governors of the National Association of Securities Dealers, Inc. The corporate petitioner was formerly registered with the S.E.C. as a broker and dealer in securities. The individual petitioner, Edward J. Hagen, is president of the corporate petitioner.

The action in this court is pursuant to § 25(a) of the Securities Exchange Act of 1934, 15 U.S.C. § 78y(a). The basic statute under which the Board of Governors of the National Association of Securities Dealers, Inc. acted (and prior to it the District Business Conduct Committee of NASD) is 15 U.S.C. § 78o–3 which is commonly referred to as the Maloney Act. This is an industry regulatory statute having to do with over-the-counter brokers and dealers.

Petitioner was found to have violated certain restrictions and requirements  imposed by emergency rules of fair practice designated 68–4, 69–2 and 69–4, which emergency rules were part of a series adopted by the NASD commencing in June 1968. These were designed to deal with the back office problems which resulted from the high volume of securities transactions including the problem of the large number of "fails to deliver" and "fails to receive" carried in the accounts of brokers and dealers.

Rule 68–4 was adopted in November 1968 effective for a 60-day period, from

---

* Of the Ninth Circuit sitting by designation.

December 2, 1968 through January 30, 1969. This prohibited a member from selling securities from its own account or buying a security for a customer if it had any "fails to deliver" in that security 120 days or older. It was specified that conduct in violation of this rule was deemed a violation of Section 1 of Article III of the regulations of the NASD.

In January 1969 emergency Rule 68–4 was reenacted and designated 69–2 effective January 31, 1969 through April 1, 1969. Rule 69–4 was also adopted in January 1969 effective February 15 through April 15, 1969, and this section provided that a member having a "fails to deliver" or "fails to receive" on its books which was not cleared within 30 days after reaching an age of 120 days was guilty of a per se violation of Section 1 of Article III as well as of Rule 69–4.

The NASD Board of Governors found that petitioner had numerous violations of the mentioned emergency regulations. The Securities and Exchange Commission carefully reviewed the findings and conclusions of the NASD Board and affirmed most of them. Violations were found with respect to Rule 68–4 and Rule 69–2 (that is the reenacted provi-

sion). However, the vast majority of the violations occurred during the period covered by 68–4. The Commission detailed the violations and concluded that the NASD was fully justified in determining that there were "fails to deliver" arising out of numerous of the underlying transactions.[1]

The District Business Conduct Committee had previously found that the rules were validly enacted and that petitioners had violated the said rules. A fine of $5,000.00 plus $278.25 in costs was imposed. The Board of Governors of the Association reduced the fine to $3,000.00 and suspended Hagen & Company's membership for three days and suspended the individual petitioner from association with a member for three days. The costs were approved and a small additional assessment of costs was imposed. The S.E.C., as noted previously, dismissed the review proceedings and thus affirmed the sanctions as modified.

▆ In connection with the present review, petitioners do not dispute that their conduct found by the District Business Conduct Committee and affirmed by the Board of Governors constituted violations of the mentioned emergency rules. The thrust of their

---

1. The Commission's ruling in pertinent part is as follows:

In our judgment, the NASD was warranted in concluding that there were fails to deliver arising out of the underlying transactions described above. Although these were not the most usual type of fails items, it appears that in each instance not only did the member consider that a valid transaction existed, but the contra-broker also recognized it as such, as reflected in the confirmations issued and in some of the cases in utilization of the "buy-in" procedure which presupposes a good contract. Moreover, particularly in light of the emergency situation, we find nothing improper or unreasonable in a requirement that transactions in which the tender of securities has been rejected because of misunderstanding or confusion be cleared after an extended period has already elapsed, or, as more pertinent to the rules under consideration, that no further transactions in the

security be entered into until the earlier transaction has been cleared. It would not appear that the clearing of those transactions through any of the recognized methods of liquidation would defeat any existing legal claims.

We accordingly affirm the NASD's findings regarding fails in the above six securities, although we find that in the case of Naturizer securities, delivery was effected on about January 16, 1969 and that about 5 transactions subsequent to that date which the NASD found improper were in fact permissible. We also set aside its findings of violations with respect to 7 transactions in securities of U. S. Silver Mining Corp. which were effected after the fail to deliver was eliminated by the contra-broker's execution of a "buy-in."

In sum, we affirm the NASD's findings of violations with respect to 77 of the questioned transactions and set aside its findings with respect to the remaining 17.

arguments is that the rules were invalid because the emergency condition dated back to 1967 and continued for a period of approximately three years. Petitioners contend that an emergency of this duration is not the kind of emergency contemplated by Article VII, Section 1 of the NASD by-laws which empowers the adoption of rules of fair practice by two-thirds vote of the membership (at the present time by a majority of the membership) and which contains a proviso allowing the Board of Governors to adopt emergency rules without submission to the members for a period not to exceed the duration of the emergency or 60 days, whichever is less. Petitioners say in essence that there can be but one emergency and that this cannot exceed 60 days. They further maintain that the Committee, the Board and the S.E.C. have erred in upholding the findings that there was an emergency justifying an action.

This court has previously considered § 15A of the Act and has generally approved the Congressional scheme involved. Its essentials are succinctly described in the court's opinion, 354 F.2d 64, 65:

> Transactions in over-the-counter securities are governed by the Maloney Act of 1938 which added § 15A to the Securities Exchange Act. The statute provides for cooperative regulation through the registration with the Securities and Exchange Commission (SEC) of one or more "national securities associations." The National Association of Securities Dealers, Inc., (NASD) is the only association which has been so registered. It has adopted rules authorized by the statute and approved by SEC for protection of investors and the public interest. The NASD Rules of Fair Practice provide in Art. III, § 1, that members "shall observe high standards of commercial honor and just and equitable principles of trade." * * *

Handley Investment Co. v. Securities and Exchange Commission, 354 F.2d 64, 65 (10th Cir. 1965).

As previously noted, Article VII, § 1 of the NASD by-laws adopted pursuant to the Maloney Act prescribes the procedure for adoption of rules of fair practice. Unquestionably this provision contemplates that regulations are to be submitted to the membership. But it also recognizes that there are instances which necessitate emergency action by the Board and grants authority to proceed where the emergency is found to exist. The S.E.C. under the Act, and this includes the provision which allows the adoption of emergency rules, is empowered to abrogate any rule adopted by the Association. The Commission also has the authority to request the Association to alter or supplement its rules in certain areas including the method for adoption of any change or addition to the rules of the Association and the method of choosing officers or directors. If the Association fails to comply with the Commission's request, the latter is authorized to order such alteration or supplement.

It is true that an emergency justifying departure from the particular organic law or procedure usually contemplates an unforeseen combination of circumstances or the resulting state that calls for immediate action—a pressing need. See Webster's International Dictionary. But this does not rule out, as petitioners argue, a condition which is somewhat protracted in time because just as the emergency itself is unforeseen so also oftentimes is its duration. The rule-making authority is likely to hope and expect that the condition will pass so as to avoid the need for permanent legislation. Once it becomes apparent, however, that the condition is of long duration or is what might be called a normal rather than an emergency condition, emergency powers are probably not appropriate.

Petitioners contend that the reenactment of a rule following the 60-day maximum emergency period allows the Association to circumvent the 60-day maximum period. It is said that this could allow the Association to avoid submis-

sion of the rule to the membership and thus to approve this way of doing business would permit the use of this emergency technique ad infinitum. This argument loses sight of the fact that Association activities are always subject to scrutiny by the Commission and are also subject to judicial review pursuant to § 25(a) of the Securities and Exchange Act of 1934, 15 U.S.C. § 78y(a). Abuse of the emergency authority is thus subject to ready correction. No such abuse is here apparent.

To adopt the narrow construction of the term "emergency" which is urged by petitioner would seriously impair the ability of the Board to deal not only with unforeseen conditions, but also with conditions which create a pressing necessity or exigency which is also a species of emergency.

Quite apart from the fact then that most of the violations found to exist occurred during the initial period while regulation 68–4 was in effect, it does not appear from an examination of the record and consideration of the surrounding circumstances that the Association abused or exceeded its powers in the present instance, and we consider the Commission's appraisal of the exercise of the emergency power to be reasonable:

> Under the circumstances presented here, however, we do not believe that it was improper for the NASD to deal through its emergency rule procedures with the back office situation that it initially found to exist in June 1968. We also consider that the need for flexibility of action justified the NASD in determining periodically thereafter, at least until it could be ascertained what the conditions that existed required on a long-range basis, whether extraordinary restrictions on members' activities were still needed rather than undertaking to incorporate such restrictions into its permanent rule structure.

As to the second matter, namely the conditions in the securities industry which gave rise to the regulations, we are bound to accept the word of the Commission as to the magnitude of the so-called back office problems in the securities industry during the past several years since there is substantial evidence to support it. After noting that these problems increased to alarming proportions during the period November 1968 to January 1969, the Commission said:

> * * * We cannot say that the NASD was not justified in its determinations incident to the enactment of the rules here under consideration that the emergency originally found to exist still persisted. Nor do we read the by-law provision under which the Board acted as limiting the duration of an emergency to a maximum of 60 days. In our view, that provision merely represented a limitation on the life of the particular rule, and did not preclude the NASD from re-enacting the same rule for another 60-day period, or adopting a new rule designed to cope with the same emergency, provided only that it made a new determination that the emergency conditions still existed.

Inasmuch as the petitions for review before us are wholly lacking in merit, the same must be and are dismissed.