278

John S. SELIG, Securities Commissioner
*v.* Stephen R. NOVAK

73-253                                    506 S.W. 2d 825

Opinion delivered March 25, 1974

*Kenneth E. Suggs*, for appellant.

*Catlett & Henderson*, for appellee.

LYLE BROWN, Justice. Appellee Stephen R. Novak held a license issued by the Arkansas Securities Commissioner to act as agent for Raney Brothers, Inc., a broker-dealer registered with the Commissioner. Raney's authority was restricted to transactions in municipal and other governmental securities. The Commissioner, after a public hearing on

five charges instituted by appellant and against appellee, permanently revoked appellee's license. On appeal to circuit court it was held that the findings upon which the Commissioner based the permanent suspension were affected by error of law and not supported by substantial evidence of record. The circuit court ordered that a one-year suspension of appellee's license be substituted for the permanent revocation. Here the Commissioner advances three points for reversal: (1) that the finding of the Commissioner was supported by substantial evidence, (2) that the Commissioner did not commit any error of law, and (3) that the trial court erred in refusing to permit newly discovered evidence to be adduced before the Commissioner.

The present Arkansas Securities Act was enacted in 1959, it is based on the Uniform Securities Act and has been amended several times. It is codified in Title 67, Ark. Stat. Ann. (Repl. 1966) beginning with § 67-1235.

1. *The Charge of Excessive Markups.* In the latter part of 1969 and early 1970 appellee agent effected twenty-nine separate bond transactions with Ocean National Bank, Kennebunk, Maine; People's State Bank, Mansfield, Ill., and the Bank of Danville, Danville, W. Va. According to evidence introduced by the Commissioner, the bonds were sold to those banks at an increase of selling price over cost ranging from 10.009% to 27.827%. The Commissioner contends that the markup is so excessive as to amount to a fraud on appellee's clients and is condemned by Section 1 of the Act. Ark. Stat. Ann. § 67-1235 (Repl. 1966). The Commissioner avers that because of the fiduciary relationship it is the duty of the broker's agent to disclose the markup. The National Association of Securities Dealers is recognized as a leading association in the industry and it is pointed out that the Association approves a markup policy under which the ratio should not normally exceed five percent. E. Gadsby, 11A Business Organizations, Federal Securities Exchange Act (Matthew-Bender 1973). The Commissioner argues that the primary purpose of the securities laws is " . . . to substitute a philosophy of full disclosure for the philosophy of caveat emptor and thus to achieve a high standard of business ethics in the securities industry". *Affiliated Ute Citizens* v. *United States et al*, 406 U.S. 128 (1972). "The essential objective of securities

legislation is to protect those who do not know market conditions from the overreachings of those who do." *Hughes v. SEC*, 139 F. 2d 434 (2d Cir. 1943). Several cases are cited wherein it was held to constitute fraud if an excessive markup was exacted. *Hughes, supra; Otis & Co. v. SEC*, 106 F. 2d 579 (6th Cir. 1939); *Associated Sec. Corp. v. SEC*, 293 F. 2d 738 (10th Cir. 1961); *Handley Inv. Co. v. SEC*, 354 F. 2d 64 (10th Cir. 1965); *Merrit, Vickers, Inc. v. SEC*, 353 F. 2d 293 (2d Cir. 1965).

Appellee responds by pointing out that we have no statute defining the term "fraudulently excessive markup". He also says that appellant's witness on the subject "assumed the market value of the bonds was the price paid for them by Raney Brothers, Inc." Appellee also points up the fact that in the cases cited by appellant on markups, it was shown in every case that the markups were considerably higher than in the case at bar. Also, it is argued that when the total number of bonds bought by Raney and sold to Peoples State Bank is figured in toto, only a profit of 3.8% is shown; using the same method of calculation, appellee argues that a profit of 1.8% was shown on the transactions with Ocean National Bank. Finally, appellee points out that no witness testified there was a failure of disclosure to the banks or that appellee made any misrepresentation to the banks. Summarizing his defense to the charge of excessive markups, appellee says:

> Now, then, there was no statutory provision defining excessive markups; no Rule or Regulation of the Securities Division covering excessive markups; no Rule or Regulation of the Division prohibiting adjusted trading; no proof as to the market value of the bonds traded; no complaints from the banks; no evidence as to the representations, if any, made to the banks; and no excessive profit realized.

2. *The Charge of Dealing in Corporate Securities.* Appellee's license as an agent for Raney Brothers, Inc., restricted him to dealings in municipal and other governmental securities; in other words, he had no authority under his license to deal in corporate securities. It is not disputed that in November 1969, appellee purchased from Ocean National Bank seven groups of corporate bonds; that on the same date appellee

sold to Solomon Brothers five groups of corporate bonds; that on January 12 and 1 1972, appellee effected a sale of Ling-Temco-Vought, Inc. debentures to Frederick W. Smith of Little Rock; and on January 17, 1972, appellee was instrumental in the purchase by Smith of an additional three million dollars of the same issue of debentures.

In replying to the charge appellee contends that he handled during each of the years 1969 through 1971 an average of 240 transactions connected with municipal bonds; that the corporate transactions were isolated; and that "An isolated purchase and sale which occurred over three years ago is not a course of conduct, but is inconsequential . . . "

3. *The Charge of Unethical Practices in Connection with the Transactions Concerning the Ling-Temco-Vought Debentures.* As we have mentioned, appellee assisted in the negotiations on behalf of Mr. Smith in the purchase of $1,700,000 of LTV debentures. Appellee instructed LTV, without Mr. Smith's knowledge, to draw the confirmation in appellee's name and Mr. Smith's name jointly. Appellee used his apartment address for the delivery of the confirmation. It appears appellee felt he was entitled to a fee of $150,000 for his personal services regarding the acquisition and apparently he wanted the confirmation so drawn because it would protect him in collecting his fee. (That fee was in addition to the regular commission charged by Raney Brothers.) The Commissioner ruled it was an unethical and dishonest practice, citing Sections 1(1), 1(2), and 1(3) of the Arkansas Securities Act. Ark. Stat. Ann. § 67-1235 (Repl. 1966). Appellee's effort to collect the fee failed but the Commissioner said that had appellee been successful, he would have defrauded Mr. Smith and his company. Mr. Smith testified that at no time did he agree that appellee would be compensated for his "special services" and his testimony was uncontradicted. (Appellee did not testify.)

The substance of appellee's response may be summarized from his brief: "Placing Mr. Novak's name on the confirmation was an obvious attempt to insure that Mr. Novak received whatever compensation he was entitled to. No matter how expansive the interpretation of the word fraud has been under the various securities acts in the United States it cannot reasonably be said that it includes actions taken to

protect the actor's legitimate interests". And again: "This attempt to gain leverage to encourage such a settlement, clearly could not operate as a fraud or deceit on Mr. Smith or his company and thus Section 1(3) of .the Securities Act could not have been violated".

4. *The Charge of Churning Accounts.* "Churning" is excessive trading by a broker who has a discretionary account with a customer in order to generate commissions for the broker with relatively little concern for the welfare of the customer. *Pierce* v. *Richard Ellis & Co.,* 310 N.Y.S. 2d 266 (1970). In other words, every trading transaction brings a new commission to the agent. The Commissioner classified churning as a procedure that is prohibited by Section 1 of the Securities Act. Since that section is being referred to so many times we set it out. It is also found in Ark. Stat. Ann. § 67-1235 (Repl. 1966). It reads:

> It is unlawful for any person, in connection with the offer, sale or purchase of any security, directly or indirectly
>
> (1) to employ any device, scheme, or artifice to defraud,
>
> (2) to make any untrue statement of a material fact or to omit to state a material fact necessary in order to make the statements made, in the light of the circumstances under which they are made, not misleading, or
>
> (3) to engage in any act, practice, or course of business which operates or would operate as a fraud or deceit upon any person.

The Commissioner also ruled that churning of accounts is prohibited by Rule 4 (M) (6), Rules of the Securities Division. That Rule condemns as unfair and misleading "Willfully switching or 'churning' securities, including mutual funds, held by a customer, or reloading him with securities for the purpose of accumulating commissions".

The twenty-nine sales and purchases to the three banks heretofore described were used by the Commissioner to sustain his finding against appellee of churning securities. Appellant makes this analysis in his brief:

It is important to note that of the 29 transactions charged against Mr. Novak, 21 were same day transactions. Of the remaining eight transactions, the lapse in time between Raney Brothers purchase date and Mr. Novak's selling date range from only three to seven days, well within the meaning of a contemporaneous transaction for municipal bond purposes.

In defense of this charge, appellee offered the testimony of Mr. William Sherman, Arkansas Securities Commissioner from March 1969 through 1971. Mr. Sherman testified that in order to constitute churning, the securities dealer must have carte blanche authority and control over the account and some type of power of attorney to act without consulting the customer. Appellee contends appellant did not show that appellee had such authority over the three banks' accounts.

5. *The Charge of Falsifying Applications.* It was charged that appellee falsified his original application in 1970 for an agent's license and in his renewal applications in 1971 and 1972. The particulars of those charges were that he failed to disclose (1) his actual employment history; (2) that he had been licensed in 1964 as an agent for Bevark Investment Company, an Arkansas broker-dealer; (3) that he had been licensed in 1965 and 1966 as an agent for American Capital Enterprises; and (4) that his license mentioned in (3) had been revoked for cause in 1966. It was further charged that in his agent's renewal application in 1971, appellee answered in the negative the question of whether he had been a defendant in a civil or criminal action during the previous year when in fact he had incurred a misdemeanor conviction for gambling in 1970.

The Commissioner contends that the foregoing falsifying charges constitute a violation of Section 16 of the Securities Act; Ark. Stat. Ann. § 67-1250 (Repl. 1966). Under that section it is unlawful to file any statement which is in any respect false or misleading.

Appellee did not attempt to rebut the proof. He contends they were minor errors and of no consequence, and that they were not material misrepresentations of important facts.

The Commissioner found appellee guilty on all counts and imposed the following penalties: (1) Churning, three months suspension; (2) Dealing in corporate securities, one month suspension; (3) Markups, LTV transactions, and misrepresentations in original application, permanent suspension; and (4) Failure to report gambling conviction, one month suspension.

The trial court wrote an exhaustive and helpful memorandum of its findings. The memorandum deals with those charges for which the Commissioner invoked permanent suspension. With respect to the charge of markups, it was noted that Chairman Selig stated "that the issue goes to whether the markups were fraudulently excessive as opposed to whether they were reasonable". The year in which the markups occurred was 1969 and Mr. Bill Sherman testified there were no rules and regulations in existence for the year 1969 relating to excessive markups. "And the tenor of his testimony is to the effect that Mr. Novak's transactions were probably no different frmm that of other persons engaged in the business of selling securities." The court concluded there was no substantial evidence in the record which would support revocation on the charge of markups.

With respect to the Ling-Temco-Vought transaction with Mr. Smith, the trial court considered it the most serious charge. However, it was concluded that Mr. Smith contacted appellee, not in his capacity of the seller of securities, but for appellee's acquaintance with an LTV official and appellee's capacity to locate the debentures Mr. Smith desired to purchase. It was noted that Mr. Smith had reason to know that appellee would expect remuneration for services rendered, although there was no specific agreement thereon. The court found there was no substantial evidence to the effect that placing appellee's name on the confirmation constituted a scheme to defraud Mr. Smith.

With regard to the charge of giving misleading information, or withholding information on appellee's original application, the court found there was no substantial evidence of giving false and misleading information of a material fact.

Appellee Stephen R. Novak filed his petition for review

in the circuit court, citing a section of the Arkansas Administrative Procedure Act; Ark. Stat. Ann. § 5-713 (d) (Supp. 1973). That section directs that the record, upon application of petitioner, be transmitted to the circuit court for review. The circuit court, in examining the record on review, tested the record in light of Ark. Stat. Ann. § 5-713 (h) (Supp. 1973) and determined that the Commissioner committed error of law and that his decision was not supported by substantial evidence.

If the findings of the Commissioner as to the facts are supported by substantial evidence, and if those facts are competent and material, then those findings of facts are conclusive. Ark. Stat. Ann. § 67-1257 (Repl. 1966); Ark. Stat. Ann. § 5-713 (h) (5). See *Jarvis* v. *Alcoholic Beverage Control Board*, 253 Ark. 728, 488 S.W. 2d 712 (1973). We have already recited the essential disclosure of facts and of course will not repeat them. We have made a careful evaluation of the facts surrounding each charge and find them to meet the tests required by the statutes.

Now with respect to the finding of the circuit court that the Commissioner was in error as to the law. The only place in the trial court's opinion where we find error of law applied is with respect to the Ling-Temco-Vought transaction. The court said "such conduct falls short of the legal definition of fraud". We perceive that the court had in mind the common law rule as to fraud. It is provided in the Securities Act; Ark. Stat. Ann. § 67-1247 (d) (Repl. 1966): " 'Fraud,' 'deceit,' and 'defraud' are not limited to common-law deceit".

We agree with appellee that some of the violations (for example, "markups") cannot be found spelled out in the statutes. However, those charges which cannot specifically be found in the statutes are covered by general language (which we have quoted) and reinforced by case law which has been developed over the years to protect the public from unethical conduct. We have discussed a number of those cases.

The judgment of the trial court is reversed and remanded with directions that the order of the Commissioner be reinstated.