The Honorable Doug Wood State Representative 215 North Claremont Sherwood, Arkansas 72116
Dear Representative Wood:
This is in response to your request for an opinion concerning the authority of the Arkansas Securities Commissioner to promulgate "markup" guidelines. You indicate that the Commissioner has set guidelines in the form of set percentages that broker/dealers should charge on the transfer of various "riskless" securities, and you are concerned that there is no statutory authority for this exercise of authority by the Commissioner, and that the guidelines amount to unauthorized "de facto" rate-making by the Commission.
For the reasons that follow, it is my opinion that the Securities Commissioner does indeed have the authority to adopt "markup" guidelines.
The applicable Arkansas statutory law is found at A.C.A.23-42-101 et seq., the "Arkansas Securities Act". The act, in23-42-204, sets out the Commissioner's authority to make rules, forms, and orders, and provides in pertinent part:
 (a) The commissioner, from time to time, may make, amend, and rescind any rules, forms, and orders which are necessary to carry out the provisions of this chapter. This includes rules and forms governing registration statements, applications, and reports and defining any terms, whether or not used in this chapter, insofar as the definitions are not inconsistent with the provisions of this chapter. For the purpose of rules and forms, the commissioner may classify securities, persons, and matters within his jurisdiction and prescribe different requirements for different classes.
 (b) No rule, form, or order may be made, amended, or rescinded unless the commissioner finds that the action is necessary or appropriate in the public interest, or for the protection of investors, and consistent with the purposes fairly intended by the policy and provisions of this chapter.
It is my opinion that this provision gives the Commissioner broad authority to promulgate rules to carry out the provisions of the chapter. We must now look to those specific provisions to determine whether the Commissioner is indeed acting within her statutory authority in promulgating "markup" guidelines. Two statutory provisions, a Securities Commission rule, and the case of Selig v. Novak, 256 Ark. 278, 506 S.W.2d 825 (1974), in my opinion, give the Commissioner the authority to adopt the guidelines. The first statutory provision is A.C.A.23-42-308(a)(2)(G), which provides:
 (a) The commissioner may by order deny, suspend, or revoke any registration if he finds that:
 (1) The order is in the public interest; and
 (2) The applicant or registrant or, in the case of a broker-dealer or investment adviser, any partner, officer, or director; any person occupying a similar status or performing similar functions; or any person directly or indirectly controlling the broker-dealer or investment adviser:
* * *
 (G) Has engaged in dishonest or unethical practices in the securities business.
Pursuant to this statute, the Commissioner has adopted Rule 6.01 which is entitled "Unfair, Misleading and Unethical Practices of Broker-Dealers or Agents". The rule sets out several instances which may result in denial, revocation, or suspension of a license issued under the act. Subsection (I) of the rule provides that the following conduct may be grounds for disciplinary action:
 Charging excessive markups or entering into a transaction with or for a customer at a price not reasonably related to the current market price of the security.
Subsection (I) goes on to provide that markups should generally be in line with the prevailing market percentages, but recognizes that in some instances deviations from the market may be justifiable.
The second statutory provision is A.C.A. 23-42-507. That section provides:
 It is unlawful for any person, in connection with the offer, sale, or purchase of any security, directly or indirectly:
(1) To employ any device, scheme, or artifice to defraud;
 (2) To make any untrue statement of a material fact or to omit to state a material fact necessary in order to make the statements made, in the light of the circumstances under which they are made, not misleading; or
 (3) To engage in any act, practice, or course of business which operates or would operate as a fraud or deceit upon any person. (Emphasis added.)
The emphasized language was held to include the charging of excessive "markups" in Selig v. Novak, supra. The Arkansas Supreme Court therein stated:
 We agree with appellee that some of the violations (for example, "markups") cannot be found spelled out in the statutes. However, these charges which cannot specifically be found in the statutes are covered by general language (which we have quoted) and reinforced by case law which has been developed over the years to protect the public from unethical conduct.
256 Ark. at 285.
One thing is clear from the statutes as interpreted in Selig: the Commissioner has the authority to deny, revoke or suspend the license of a broker/dealer or agent for charging markups which are so excessive as to create a "fraud" upon clients. To this end, the Commissioner has adopted "guidelines" setting out reasonable markup percentages. The guidelines are just that — guidelines. The broker/dealer is given the opportunity to justify markups in excess of the stated guidelines.
It is my opinion that the set of markup guidelines adopted by the Commissioner is merely a device to monitor whether individual broker/dealers are charging excessive markups so as to trigger disciplinary action by the Commission under A.C.A. 23-42-308. As such, it is my opinion that the Commissioner is acting within the scope of her authority under A.C.A. 23-42-308, and 23-42-507, as interpreted in Selig v. Novak, in promulgating markup guidelines.
The foregoing opinion, which I hereby approve, was prepared by Assistant Attorney General Elana L. Cunningham.