# Ken HIXSON *v.* STATE of Arkansas

CA CR 79-14          587 S.W. 2d 70

Opinion delivered August 15, 1979
and released for publication October 4, 1979

*Douglas W. Parker,* for appellant.

*Steve Clark,* Atty. Gen., by: *Dennis R. Molock,* Asst. Atty. Gen., for appellee.

GEORGE HOWARD, JR., Judge. The central question presented for review by this appeal[1] is whether the jury's verdict finding appellant guilty of theft of property by deception is supported by substantial evidence. While a finding that there is substantial evidence requires an affirmance of appellant's conviction, a finding to the contrary dictates a reversal.

## THE FACTS

On October 23, 1978, appellant was accused by information with violating Ark. Stat. Ann. § 41-2203 (Repl. 1977), between March 1, 1977, and January 5, 1978, inclusive, in Sebastian County, Arkansas, Fort Smith District, of unlawfully, feloniously and knowingly obtaining an aggregate sum of money in excess of $2,500.00 by deception, with the purpose of depriving the owners, the membership of three churches in Fort Smith, of their funds by promising to deliver

---

[1] This appeal was originally filed in the Arkansas Supreme Court, but was subsequently assigned to this Court under Rule 29(3) of the Rules of the Supreme Court of Arkansas.

church directories to the churches.[2]

The case was tried to a jury. The jury found the appellant-defendant guilty of the charge and, after deliberating upon the charge, as well as a habitual criminal count (Ark. Stat. Ann. § 41-1001) (Repl. 1977), the jury assessed appellant's confinement to the Arkansas Department of Correction for a period of 12 years and imposed a fine in the sum of $2,500.00.

Appellant asserts the following points for reversal of his conviction:

1. The evidence submitted is insufficient as a matter of law to support the verdict, and the Court erred in not directing a verdict in favor of the appellant at the close of the State's case.

2. The Court erred in denying appellant's motion in limine.

3. The Court erred in refusing to specially instruct the jury prior to permitting evidence to be presented in behalf of the State which involved acts which occurred outside Sebastian County, Arkansas.

## THE DECISION

The relevant statutory provisions that appellant was accused of violating are:

"(1) A person commits theft of property if he:

---

[2]On October 11, 1978, the State, pursuant to a motion filed by appellant-defendant, filed a bill of particulars stating that individual members and their families of 27 churches, in Arkansas and Oklahoma, and in Sebastian County, Arkansas, Fort Smith District, in particular, had paid monies to appellant-defendant ". . . upon the defendants' representation that the churches and members would receive church directories in return for monies paid, the defendants knowing at the time that these representations were made that they were false and without any intent being made before or after receiving the monies to carry out those representations, the representations being made for the purpose of depriving the owners of their money."

(b) knowingly obtains the property of another by *deception*[3] or by threat, with the purpose of *depriving*[3] the owner thereof.

"(2)(a) Theft of property is a class B felony if:
(i) the value of the property is $2,500.00 or more."
(Emphasis added)

We are persuaded that it was incumbent upon the State to establish the following in order to convict the appellant-defendant of the charge brought under the above provisions:

1. That appellant-defendant, at the time he received the monies from the owners, did not intend to carry out his promise to deliver church directories to the churches and the membership thereof in return for the monies received by him.

2. That appellant-defendant knew, at the time he promised to deliver church directories to the churches and the membership thereof that the promise or representation was false and that the promise was made for the purpose of depriving the owners of their property.

We now turn to the record before us, which is rather voluminous, consisting of 87 exhibits and three volumes of testimony, for analysis in order to determine if the evidence

---

[3]Deception and depriving, in relevant part, are defined in Ark. Stat. Ann. § 41-2201 (Repl. 1977) as:

(3) 'Deception' means:
(a) "creating or reinforcing a false impression, including false impressions of fact, law, value or intention or other state of mind that the actor does not believe to be true; or

. . .

(4) 'Deprive' means:
(a) "to withhold property or to cause it to be withheld either permanently or under circumstances such that a major portion of its economic value, use, or benefit is appropriated to the actor or lost to the owner; and

. . .

(c) "to dispose of property or use it or transfer any interest in it under circumstances that make its restoration unlikely."

presented by the State may be characterized as substantial.

Mrs. Rita Sue Rogers, Secretary of Trinity Baptist Church, Fort Smith, Arkansas, testified that on January 16, 1977, appellant entered into an agreement with Trinity Baptist Church and its members to take pictures of the membership and in return for the sale of the pictures to the members, appellant would supply pictorial directories to the church free of charge. The number of church directories to be supplied was 125% of the number of members who had their pictures taken. In other words, the church would receive at the rate of 125 directories for every 100 members who purchased portraits. No money was to be paid by the church.

The evidence clearly shows that appellant received $1,-700.00 from the membership of Trinity, but the church has never received any directories, although appellant promised to deliver the directories within 60 days after the pictures were taken. The photographing of the membership was completed on April 3, 1977.

Mrs. Rogers further testified that the project created such interest and enthusiasm among the members that a group of ladies volunteered to serve as a committee to inform the entire membership of the project and to solicit their support; that the committee scheduled the time for the individual and family sittings for the portraits; and that if shut-ins already had photographs, these photographs were to be placed in the directory for a fee of $5.00.

Mrs. Rogers also stated that appellant delivered a $500.00 personal check to the church, drawn on Sequoyah State Bank, Muldrow, Oklahoma, and made payable to Trinity Baptist Church to guarantee the delivery of the portraits to the membership; that when the pictures were not delivered, as scheduled, the check was deposited for collection, but was subsequently returned marked "account closed."

Rev. J. Elton Pennington, Pastor of Temple Baptist Church, Fort Smith, Arkansas, testified that appellant received $1,600.00 from his membership for individual and family

portraits; that appellant promised to deliver directories within 90 days after the photographic work had been completed. Rev. Pennington further testified that his church would not have participated in the project if it were not for the promise made by appellant to deliver church directories at no cost to the church.

Rev. Willis Truman Moore, Pastor of East Side Baptist Church, Fort Smith, Arkansas, testified that appellant agreed to supply pictorial directories to the church in return for the purchase of individual and family portraits by the members; that 150 families were photographed and paid approximately $3,000.00 to appellant; that the church has never received any directories; that appellant offered one excuse after another when inquiries were made about the directories and that the portraits of the membership were of a very poor quality.[4]

---

[4]This record is replete with testimony from the following named pastors and churches whose experiences with appellant parallel the experiences of Mrs. Rogers, Rev. Pennington and Rev. Moore:

(a) Rev. Don Chandler, Pastor of Wakefield Baptist Church, Little Rock, Arkansas, whose members paid between $3,000.00 and $4,000.00; and,

(b) Rev. Jerry Highfill, Pastor of Sunset Baptist Church, Ponca City, Oklahoma, whose members paid $3,090.34; and,

(c) First Christian Church, North Little Rock, Arkansas, whose members paid $2,000.00; and,

(d) Rev. Robert S. Jackson, Sr., Pastor of First Baptist Church, Poteau, Oklahoma, whose members paid approximately $2,509.23; and,

(e) Father Alan Loth, Pastor of Mother of Sorrows Church in Apache, Our Ladies in Sterline Church and St. Anna's Church in Elgin, Oklahoma, whose members paid approximately $1,400.00; and,

(f) First United Methodist Church of Harrison, whose members paid $1,374.24; and,

(g) First Church of the Nazarene, North Little Rock, Arkansas, whose members paid $1,825.00; and,

(h) Rev. William R. Edwards, Pastor of Elmdale Baptist Church, Springdale, Arkansas, whose members paid $2,010.00; and,

(i) First Baptist Church, Arkoma, Oklahoma, whose members paid $1,100.00; and,

(j) Church of the Nazarene in Rogers, Arkansas, whose pastor paid $136.20, but had no knowledge of the amount of money paid by his membership; and,

(k) Church of Christ in Kingfisher, Oklahoma, whose members paid

Dan Wilmoth, a representative of Photo World of Memphis, Tennessee, testified that his firm specialized in photographic processing for professional photographers; that appellant came to Memphis in April or May, 1977, to have a roll of film developed and that appellant advised him that appellant was just getting started in business for himself; that appellant discussed the prospects of Photo World printing church directories for appellant's firm and that while Photo World had never printed church directories, an agreement was made with appellant whereby Photo World would print the directories for $1.50 a copy with a minimum of 200 copies; that Photo World received the necessary materials for only one church directory and that was for Bethany Presbyterian Church. However, Mr. Wilmoth testified, the directory was never printed because appellant owed Photo World $1,200.00 for work previously done in which Photo World received an insufficient fund check that had not been made good; that appellant told Photo World that appellant could not pay the $1,200.00 at that time because appellant had paid $5,000.00 on a property note. Mr. Wilmoth further testified that Photo World printed its first directory, during its 11 years of existence, in 1978.

Testifying further, Mr. Wilmoth stated that when appellant requested Photo World to commence work on the materials supplied for the one church directory, appellant was advised to "send me Three Hundred Dollars ($300.00) Cashiers' Check and I'll get it printed for him."; that a day or two later, appellant called and stated, "hey, I can't get the money, you know, can you do it, please?" Wilmoth replied, "I'll tell you what, you send me One Hundred Fifty Dollars ($150.00) and I'll do it." Wilmoth testified he never heard anymore from appellant.

Dan Wilmoth also stated that the cost for printing a color 8 x 10 ranges from .75 cents to $4.50.

---

$656.35; and,

(l) Bethany Presbyterian Church of Muskogee, Oklahoma, whose members paid an undetermined amount of money; and,

(m) First Free Will Baptist Church of Ada, Oklahoma, whose members paid $2,299.00.

Don Hixson, uncle of the appellant, testified that he began working for appellant on May 15, 1977; and that he has been a photographer most of his life and that appellant did not know anything about photography and that he, Don Hixson, endeavored to teach and help appellant in appellant's new venture; that no directories were ever delivered while he worked for appellant; that appellant paid him a salary of $250.00 per week.

Don Hixson also stated that appellant's firm is still soliciting business and holding itself out as a specialist in church directories and guaranteeing deliveries.

The record contains, as exhibits, brochures, flyers and business cards circulated by appellant containing the following declarations designed to induce churches and church members to sponsor appellant's project:

1. Pictorial Enterprise specializes in pictorial church directories with instant proofs which means only one trip to the church for the family.

2. We will put up a bond if necessary.

3. Plenty of references from other churches.

4. Portraits — living color —— $24.95 value — $8.95 plus tax.[5]

Appellant argues essentially, for the reversal of his conviction, that his promise to deliver church directories within 30 to 90 days after the termination of the photographic work was "mere puffing" and, moreover, the failure of appellant to perform a "promised future act" is not criminal.

We are not persuaded by appellant's argument inasmuch as it is plain from the evidence in this record that appellant's conduct exceeded the conduct of a seller or a

[5]Evidence contained in this record reveals that there were times when choirs and various auxiliaries were present at their respective churches waiting for appellant to photograph them, but appellant never appeared; and that it was necessary to reschedule the photographing.

dealer in praising the virtues of something that he has to offer for sale and which is not calculated to, or is unlikely to deceive ordinary persons addressed. The evidence is crystal clear that the representations and promises made by appellant to deliver the church directories, which was an intricate part of the entire project and was the sole motivating factor that induced the churches and the membership to participate in the project, were false as a matter of fact and as to the value of the articles that the churches and members were to receive in return for delivering their monies to the appellant. Moreover, it is plain from this record that appellant had no experience or expertise either in photography or in the compilation of church directories; and that at the time that appellant made the promises to deliver the directories, appellant did not possess the facilities to print a directory, nor had he made arrangements with any other firm or source for the preparation of the directories.

The evidence establishes clearly that appellant made use of the funds received for purposes other than for what was promised by appellant.[6] Consequently, the membership of the churches involved have been deprived of the use and benefit of their property; and it seems obvious that restitution is unlikely.

Appellant further argues that the trial court erred in denying appellant's motion in limine. Here, appellant sought to prevent the introduction of testimony concerning the total amount of money spent for photographs and directories ordered by each church. We deem it sufficient to state that the evidence of the money spent was relevant and was admissible to establish the scheme or plan of the appellant.

Appellant finally argues that the trial court committed reversible error in refusing to give cautionary or limiting instructions to the jury, prior to permitting evidence to be presented involving acts which occurred outside of Sebastian County. It is well recognized that the granting or refusal of a

---

[6]Aside from the testimony of Dan Wilmoth that appellant told him that appellant paid $5,000.00 on a property note, the record also discloses that funds were used to purchase a horse, to pay tractor repair bills and for other purposes.

cautionary instruction lies within the discretion of the trial court. After carefully reviewing this record, we find no abuse of discretion on the part of the trial court in refusing to specifically instruct the jury prior to the reception of evidence involving other similar acts. *See:* Rule 404(b) of the Uniform Rules of Evidence. Moreover, the record reflects that the trial court did give a cautionary instruction to the jury prior to its deliberation as follows:

"The Court has admitted testimony of other conduct similar to that charged in the information. You will not be permitted to convict the defendant upon such testimony. Evidence of other similar conduct, if you believe another offense has been proven, is admitted solely for the purpose of showing motive, design and particular criminal intent, habits and practices, guilty knowledge, good or bad faith, and you should consider such evidence for this purpose alone and it shall not be considered in fixing any punishment that might be imposed.

"The Defendant is not on trial for any offense except the alleged offense for which he is on trial."

We conclude, after carefully reviewing the evidence in the light most favorable to appellee, as we must, *Williams* v. *State,* 258 Ark. 207, 523 S.W. 2d 377 (1975), the verdict of the jury is supported by substantial evidence. Accordingly, we affirm.

NEWBERN, J., dissents.

DAVID NEWBERN, Judge, dissenting. Appellant stands convicted of theft of property, having obtained it by deception with the purpose of depriving the owner of it. Ark. Stat. Ann. § 41-2203 (1) (b) (Repl. 1977). This alleged theft was charged as a class B felony because in the information and bill of particulars the State accused Appellant of having taken property of a value in excess of $2500.00. See Ark. Stat. Ann. § 41-2203 (2) (a) (i) (Repl. 1977).

The evidence of the intent of the Appellant to deceive

was extremely weak. The record presented a picture of a person struggling to succeed in a business he thought would make a profit. It is true he lacked experience as a photographer, and he was an abysmal failure as a businessman, but his failure is not a crime. The majority opinion refers to instances in which he pleaded with a printer to get directories printed, and the record shows a great deal of effort expended in trying to get the directories together. The "substantial evidence" to which the majority refers is really nothing more than Appellant's failure to deliver the directories. The argument seems to be that Appellant must have intended to deceive with respect to the agreements he entered to produce directories after he had failed so miserably to produce in accordance with some of his prior agreements. In quoting the statutory definition of "deception," the majority opinion leaves out the part of subsection (3) (e) of the statute which is as follows:

> "Deception as to a person's intention to perform a promise shall not be inferred solely from the fact that he did not subsequently perform the promise." Ark. Stat. Ann. § 41-2201 (3) (e) (Repl. 1977).

Assuming there was substantial evidence of deception here, however, I believe this record is devoid of evidence that the Appellant obtained property in excess of a value of $2500.00 as a result of the offenses charged. As the majority opinion points out, the churches were to pay nothing for the directories. Those institutions were out the value of whatever their services (no pun intended) might have been worth, but there was no attempt whatever to produce evidence of the value of the efforts they expended in getting their constituent families rounded up for the photography sessions. Nor was any attempt made by the State to show the difference between the value of what the church members received (the photographs) and what they were promised (the photographs plus the "free" directories).

The argument could be made that regardless of the fact that many if not most of the church members received photographs for their money, their money — all that was paid to Appellant for photographs and directories — was ob-

tained by deception. The logical extension of that argument, and its fallacy, is perhaps best demonstrated by these illustrations which bear degrees of analogy:

1. X promises A a one-carat diamond in exchange for $1000.00. A gives X $1000.00, but X then delivers to A a chunk of glass which is completely without value and which X intended all along to deliver to A instead of a diamond.

2. X promises A a one-carat diamond in exchange for $1000.00. A gives X $1000.00, but X then delivers to A a diamond weighing three-quarters of a carat which X intended all along to deliver to A, knowing of the deficiency. The lesser stone is worth $750.00.

3. X promises A a one-carat diamond in exchange for $1000.00. A gives X $1000.00, but X then delivers to A a diamond weighing one and one-quarter carats, which X intended all along to deliver to A, knowing it to be larger than the one promised. The stone delivered is worth $1200.00.

If no account is taken of the value received by A, then in each of these illustrations, X could be convicted of theft of property of a value in excess of $1000.00. I simply cannot believe our statute contemplates that result in illustrations 2. and 3.

The record here shows many church members received and accepted photographs in exchange for their money. The most that can be said for certain is that Appellant took those parts of their payments which could fairly be attributed to the value of the "bonus" directories. We have no idea what that value was.

As pointed out in footnote 4. of the majority opinion, the record here is indeed "replete" with testimony as to other churches which had entered agreements with the Appellant. Even if that evidence was relevant to show a scheme or Appellant's intent, it was completely irrelevant to show the value of the property obtained in the theft alleged here.

I would reverse and remand this case simply because there was no showing of the value of the property obtained by this Appellant.