Larry Dean HUGHES *v.* STATE of Arkansas

CA CR 85-151 702 S.W.2d 817

Court of Appeals of Arkansas
Division I
Opinion delivered January 29, 1986
[Supplemental Opinion on Denial of Rehearing March 26, 1986.]

*Young & Finley*, by: *Dale W. Finley*, for appellant.

*Steve Clark*, Att'y Gen., by: *Clint Miller*, Asst. Att'y Gen., for appellee.

MELVIN MAYFIELD, Judge. Appellant was convicted of operating a motor vehicle while under the influence of alcohol. He was arrested after his automobile left the road and went through a chain link fence. Officers on the scene observed that appellant's eyes were red and watery, his face was flushed, he looked sleepy, was unsteady on his feet, and had an odor of alcohol about him. Appellant was taken to the Pope County Detention Center where a breathalyzer test was performed which indicated a blood alcohol content of .11%. He was tried by a jury, found guilty of a second offense of DWI, sentenced to thirty (30) days in jail, assessed a fine and costs totaling $1,000 and had his driver's license suspended for one year.

Appellant first argues that the court erred in admitting the results of the breathalyzer test into evidence since Officer

Dilbeck, who calibrated the machine, testified that he did not know whether the test solution he used had been obtained from the Arkansas Department of Health or a private pharmaceutical company; did not know when the solution was purchased or how long it had been in the Pope County sheriff's office; and did not know whose possession the solution had been in before the breathalyzer test, who had access to the bottle after the seal was broken, or how many calibrations had been made using the same solution.

We do not think these matters make the test results inadmissible. The officer testified that the solution was supposed to be a .10% solution—not off more than .01%—that it tested .09% on the breathalyzer and that this established the reliability of both the testing solution and the machine. The appellant attempts to analogize the rule requiring that a chain of custody be established in blood-testing cases to the present case, but the evidence reveals that the situation here is entirely different. The content of a blood sample is obviously not known before the test, while the alcohol content of a calibrating solution is known before the test. So, when the calibrating solution is tested with results as expected, this tends to prove the integrity of the solution and the machine. Officer Dilbeck was certified by the Arkansas Department of Health as an operator of the breathalyzer and we think his testimony about the alcoholic content of the solution used in the calibration of the machine was admissible. In *Armstrong* v. *State*, 5 Ark. App. 96, 633 S.W.2d 51 (1982), it was argued that since there was no evidence that the substance dispensed by a pharmacist had been chemically analyzed, the state had failed to prove the appellant had fraudulently obtained a controlled substance. After reviewing some cases, we said:

> In the instant case we have the testimony of a licensed pharmacist who testified that he filled the prescription bottle from his larger container of Tussionex. Obviously he relied upon the representations of the supplier of the larger container in giving his opinion, but this is in keeping with *Milburn* v. *State*, 262 Ark. 267, 555 S.W.2d 946 (1977), and is authorized by Uniform Evidence Rule 703.

Appellant cites *Cossey* v. *State*, 267 Ark. 679, 590 S.W.2d 60 (Ark. App. 1979), as requiring strict compliance with health

department regulations regarding calibration of the breathalyzer before the results will be admissible at trial. In that case, although the regulations required daily calibration of the machine, the evidence did not show that the instrument had been calibrated at all between May 10 and May 15. Under those circumstances, it was held that compliance with the regulations was not sufficiently substantial to permit the jury to be instructed on the presumption of intoxication based upon a test performed on May 13. In the instant case, however, the instrument was correctly calibrated with a solution of known alcohol content on the same day appellant was tested.

■■ Appellant's next contention is that the court erred in permitting testimony concerning practices not contained in the health department regulations. Here appellant is arguing that Officer Dilbeck was allowed to testify that he had been told at a health department training session that it was permissible to purchase the calibrating solution from either the department or from private suppliers. Appellant contends this was impermissible hearsay evidence. First, we think the testimony was not hearsay because it was not offered for the truth of the matter asserted but rather to explain why Officer Dilbeck thought it was proper to use a privately obtained solution. *Hall* v. *State*, 286 Ark. 52, 689 S.W.2d 524 (1985). In the second place, Arkansas Department of Health, *Regulations for Blood Alcohol Testing*, at 26 & 28 (2nd revision 1984), require that approved calibrating devices and standard solutions be used, but do not specify where they are to be obtained. The trial court could properly take judicial notice of these regulations. *Johnson* v. *State*, 6 Ark. App. 78, 638 S.W.2d 686 (1982).

■■ The appellant's third argument is that Officer Dilbeck was erroneously permitted to testify to the contents of the health department regulations. This objection is based on what has been called the "best evidence" or "original writing" rule. *See* J. Reynolds, *Arkansas Uniform Rules of Evidence*, 207 (1983). Since the officer testified correctly as to what the regulations provide, appellant has not demonstrated any prejudice sustained by him and we do not reverse on the basis of nonprejudicial error. *Nolen* v. *State*, 278 Ark. 17, 643 S.W.2d 257 (1982). Moreover, Unif. R. Evid. 1005 provides that if a copy of a public record cannot be obtained by the exercise of reasonable diligence, other

evidence of its contents may be admitted.

 Finally, although appellant contends he was convicted solely on the basis of the result of the breathalyzer test, we note that even without that evidence there was substantial evidence to sustain his conviction. Appellant admitted to the officers on the accident scene that he had been driving the car. In addition, two police officers testified about the appellant's appearance and condition, as detailed in the opening paragraph of this opinion, and testified that he was intoxicated. When viewed in the light most favorable to the state, as we must on appeal, we find that the officers' testimony constitutes substantial evidence to support the jury's verdict.

Affirmed.

CORBIN and GLAZE, JJ., agree.

Supplemental Opinion on Denial of Rehearing
March 26, 1986

705 S.W.2d 455

MELVIN MAYFIELD, Judge. A petition for rehearing in this case calls our attention to certain factual errors in our original opinion; however, we find these errors do not change the result of our decision.

The record in this case shows that the type of instrument used to test appellant's breath was an Alco-Analyzer Gas Chromatograph, Model 1000. In our original opinion, we said Arkansas Department of Health, *Regulations for Blood Alcohol Testing*, at 26 & 28 (2nd revision 1984), "require that approved calibrating devices and standard solutions be used, but do not specify where they are to be obtained." Appellant's petition for rehearing states that we referred to the wrong pages. While it is true that we should have referred to page 29 instead of 28, we actually made an even greater error.

Although the case of *Johnson* v. *State*, 6 Ark. App. 78, 638 S.W.2d 686 (1982), cited in our original opinion, makes it clear that both trial and appellate courts may take judicial notice of the regulations of state boards and agencies, we took judicial notice of regulations which became effective on April 15, 1984, when the offense in this case occurred on November 19, 1983. The proper regulations at that time were those which became effective on April 28, 1970, as revised effective October 28, 1971. Those regulations, promulgated under authority of Section 2(c) of Act 106 of 1969, *see* Ark. Stat. Ann. § 75-1046(c)(Repl. 1979), contained the following provisions:

### PART E. CALIBRATION

AP-340 *Breath Testing Instruments.* Instruments designed to test direct breath samples shall be calibrated no less frequently than once each day the instrument is in operation by a Senior Operator or Operator Supervisor, using appropriate solutions of ethyl alcohol, and using methods and techniques for calibration recommended by the manufacturer of the calibration device as approved by the Department.

AP-341 *Other Methods.* Procedures other than direct breath tests shall be calibrated with known concentrations of ethyl alcohol at least once each day that tests are run. This calibration shall be performed by an Operator Supervisor, Laboratory Director or under a Laboratory Director's general supervision.

AP-342 *Other Calibration Solutions.* Gas Chromatograph calibration may be accomplished by addition of an appropriate internal standard.

■■ Although we cited the wrong regulations in our original opinion, we do not think this affects the result of our decision. Neither set of regulations provides, as contended by appellant in his original brief, that the calibrating solution must be obtained from the health department. Now, in his petition for rehearing, the appellant complains that he was unable to find out whether the calibrating solution was "standard" since the officer who calibrated the machine did not know where the solution came from. However, there was evidence that the officer was trained and certified by the health department, that the sheriff's office purchased small containers labeled for use in mixing a .10% calibrating solution, that the proper amount of distilled water was mixed and heated to a certain temperature, and that this solution tested .09% on the machine. The officer said this established a proper test for use of the solution for the purpose of calibrating the machine. Substantial compliance with the health department regulations is all that is required. *Sparrow* v. *State*, 284 Ark. 396, 398, 683 S.W.2d 218 (1985). We think the test results were properly admitted into evidence.

■ The appellant's petition for rehearing also points out that this case was submitted to the jury only on the question of whether he was in physical control of a motor vehicle while his blood alcohol content was .10% or more. From the briefs and abstract, we understood appellant was convicted of driving while intoxicated. However, the Arkansas Supreme Court has recently held that Ark. Stat. Ann. § 75-2503 (Supp. 1985) provides the same penalty for either conduct and that the "two conditions are simply different ways of proving a single violation." *See Wilson* v. *State*, 285 Ark. 257, 685 S.W.2d 811 (1985), and *Yacono* v.

*State*, 285 Ark. 130, 685 S.W.2d 500 (1985). Thus, in either event, the conviction appealed from is supported by substantial evidence.

CORBIN and GLAZE, JJ., agree.