Roy Edgar HARDCASTLE *v.* STATE of Arkansas

CA CR 87-12 755 S.W.2d 228

Court of Appeals of Arkansas
Division I
Opinion delivered July 13, 1988
[Rehearing denied August 24, 1988.]

160

*Jacoway, Sherman & Pence*, by: *William F. Sherman*, for appellant.

*Steve Clark*, Att'y Gen., by: *Leslie M. Powell*, Asst. Att'y Gen., for appellee.

JAMES R. COOPER, Judge. The appellant was charged by information with securities fraud, filing a false statement with the

Arkansas Securities Commission, and theft of property. After a jury returned a verdict of guilty on all three counts, the appellant was sentenced to eight years for fraud and fined $10,000.00; four years for false filing and fined $6,000.00; and eight years for theft and fined $11,000.00. The trial court ordered the prison sentences to run concurrently, and the fines were cumulative.

The appellant argues ten points on appeal. We find that the conviction for false filing should be dismissed because the charge was barred by the statute of limitations. The appellant's convictions are otherwise affirmed.

The appellant was charged on February 14, 1985, with making false and misleading statements in violation of Ark. Stat. Ann. § 67-1250 (Repl. 1980) [Ark. Code Ann. § 23-42-110 (1987)], in a document filed with the Arkansas Securities Commission. On October 26, 1979, the appellant allegedly caused to be filed with the Commission a claim for exemption for Founder's Development Corporation which contained false and misleading statements. The Commission's request for additional information on the dilution factor of the stock was responded to by a letter dated November 6, 1979. The Commission then issued a letter acknowledging the filing and compliance with the filing requirements on November 20, 1979, and noted that the exemption was effective for one year. The record reveals only one other communication with the Commission: a letter received by the Commission dated December 15, 1980, indicating that Marvin Clausing, M.O.N.E.Y. Makers Ltd., and Herbert Brechtel had invested in Founder's.

It is the appellant's contention that the charge filed against him in February 1985, alleging that he had filed falsely, was beyond the statute of limitations found in Ark. Stat. Ann. § 67-1255(i) (Repl. 1980) [Ark. Code Ann. § 23-42-105(a) (1987)]. That section provides:

> Prosecutions for offenses described in this Section must be commenced within the following periods of limitation: (1) Felonies—five (5) years from the date of the occurrence; (2) Misdemeanors—one (1) year from date of occurrence. The five year felony and one year misdemeanor period of limitation does not begin to run until after the commission of the last overt act in the furtherance of a scheme or course

of conduct.

The issue is when the prohibited conduct occurred. The State contends that the letter received on December 15, 1980, was the last overt act committed by the appellant or, in the alternative, that the one-year period of time the exemption remained on file constituted a continuing course of conduct. We disagree on both points.

There is no evidence in the record to establish that any of the information in the December 1980 letter was false or misleading. It is clear from the plain language of § 67-1250 that the filing of a document is criminal *only* if it contains false or misleading statements. We find that the last overt act which occurred was the letter concerning the dilution factor filed in November 1979. Therefore, the charge filed on February 14, 1985, was beyond the five-year statutory period, and we accordingly reverse and dismiss the appellant's conviction for filing false and misleading statements.

Because we dismiss this charge against the appellant, we will not address it further in connection with the appellant's remaining arguments.

## THE SUFFICIENCY OF THE EVIDENCE

The appellant challenges the sufficiency of the evidence. In accordance with *Harris* v. *State*, 284 Ark. 247, 681 S.W.2d 334 (1984), we review the sufficiency of the evidence, including any allegedly erroneously admitted evidence, prior to the consideration of other trial errors. In criminal cases, we view the evidence in the light most favorable to the State, and affirm if there is any substantial evidence to support the verdict. *Biniores* v. *State*, 16 Ark. App. 275, 701 S.W.2d 385 (1985). Substantial evidence must do more than merely create a suspicion; it must be of sufficient force and character to force the mind beyond mere conjecture and compel a conclusion one way or the other with reasonable certainty. *Id.* The fact that evidence is circumstantial does not render it insubstantial—the law makes no distinction between direct evidence of a fact and evidence of circumstances from which a fact may be inferred. *Breault* v. *State*, 280 Ark. 372, 659 S.W.2d 176 (1983).

In Count I the appellant was charged with fraud or deceit in

connection with the offer, purchase, or sale of securities. Arkansas Statutes Annotated § 67-1235 (Repl. 1980) [Ark. Code Ann. § 23-42-507 (1987)] provides as follows:

> It is unlawful for any person, in connection with the offer, sale or purchase of any security, directly or indirectly
>
> (1) to employ any device, scheme, or artifice to defraud,
>
> (2) to make any untrue statement of a material fact or to omit to state a material fact necessary in order to make the statements made, in the light of the circumstances under which they are made, not misleading, or
>
> (3) to engage in any act, practice, or course of business which operates or would operate as a fraud or deceit upon any person.

The persons identified in the bill of particulars as victims in Count I were Herbert Brechtel and Marvin Clausing; both testified at the trial. Clausing testified that he specifically remembered the appellant giving him a "confidential memorandum" prior to investing, which contained information on Founder's. Brechtel did not recall the memorandum, but acknowledged his signature on the cover indicating that he had received it. He stated that he had talked with the appellant about investing, that he did not know a lot about investing in stock, and that he relied on what the appellant told him. Brechtel invested $15,000.00 and he received 30,000 shares of Founder's stock; Clausing purchased 16,000 shares of Founder's stock for $8,000.00.

In the confidential memorandum, P.A. Treadway was listed as a director, as president, and as secretary of Founder's. The biographical sketch of Treadway stated that she majored in psychology at Kent State University, that she was an "Arkansas educator," and that she had a background in marketing and management. At trial, Treadway testified that she was the appellant's secretary, that she did not attend Kent State, that she had only been a substitute teacher for a short while, and that the only marketing and managerial experience she had was as manager of a rental company for a short period of time. She also testified that she had signed various documents at various times at the appellant's request, but that she had never been either an

officer or stockholder of Founder's. Both Clausing and Brechtel stated that, if they had been aware of the true facts of Treadway's background and status, they would not have invested in Founder's.

At the time Clausing and Brechtel invested, Founder's was in default on a note it had given M.O.N.E.Y. Makers for the purchase of forty acres of property. Universal Growth, a corporation in which the appellant was the principal stockholder and an officer, had purchased eighty acres of land for approximately $240,000.00 in September 1979. On October 22, 1979, Universal entered into a purchaser's agreement with M.O.N.E.Y. Makers, another business entity in which the appellant was the principal member. This agreement provided that, upon payment of the purchase price of $240,000.00, forty acres of the land owned by Universal would be conveyed to M.O.N.E.Y. Makers. On the same day, M.O.N.E.Y. Makers entered into an identical agreement with Founder's; the only difference was that the purchase price of the same forty acres was $260,000.00. The end result was that, by passing the land through the different entities, the appellant had artificially inflated the value of the land. Furthermore, by the terms of the various purchase agreements, legal title would not pass until the land was paid for in full. In the event of a default, title would revert to the business entities owned by the appellant. None of these facts were disclosed either to Brechtel or Clausing, and Clausing stated that he was under the impression that his investment was to be used only for improving the land and that there was no money owed on the land itself.

■ It is clear that these facts were material to Founder's financial condition. We find that this evidence is sufficient to support the jury's finding that the appellant made untrue statements of material facts and failed to reveal material facts which misled the victims. *See Selig* v. *Novak*, 256 Ark. 278, 506 S.W.2d 825 (1974).

In Count III, the appellant was charged with theft of property, a violation of Ark. Stat. Ann. § 41-2203 (Repl. 1977) [Ark. Code Ann. § 5-36-103 (1987)]. According to § 41-2203, a person commits theft of property if he knowingly obtains the property of another person, by deception, with the purpose of depriving the owner thereof. The bill of particulars listed seven-

teen victims, including Clausing and Brechtel, and involved over $79,000.00. There are five volumes of record in this case and hundreds of pages of documents, spread sheets, and financial records. Without going into unnecessary detail, the record shows that the appellant (1) induced investors to invest in one of his several business entities; (2) deposited the money into the appropriate bank account of that business entity; and (3) subsequently withdrew the money and transferred it to another business entity. Generally, as one business entity became financially troubled, the appellant would create another entity, gather investors, then transfer the funds to the troubled entity.

For example, Leamon Bush, who was listed in the bill of particulars as a victim in Count III, first invested $5,000.00, and then another $2,250.00, in an entity called Air Base Mini-Rental, which was purported to be a business which purchased equipment, such as lawnmowers, for rental to the public. He stated that he believed his money was going to be used to purchase equipment. However, the record reveals this business never got off the ground; according to Treadway, only a few pieces of equipment were purchased, not nearly enough to operate this type of business. Bush further stated that he was told his investment would also entitle him to an interest in Air Base Mini Storage.

According to the cancelled checks in the record, Bush's checks were deposited into the Air Base Mini-Rental checking account. The account was opened in August 1981 and closed in October 1982. A check from investor Carol Felix for $5,000.00 was also deposited in this account. The appellant falsely represented to Bush that the total capital contribution in Air Base Mini-Rental was $100,000.00.

Bush stated further that he did not know where his money went. According to the checks written on the Air Base Mini-Rental account, $2,900.00 went to M.O.N.E.Y. Makers and $1,076.25 went to Diversified Land (another of the appellant's business entities). Later, a $2,900.00 check from Diversified Land was deposited which indicated it was repayment of a loan. There were also checks written which were purportedly for construction costs; however, no construction was done for Air Base Mini-Rental, and apparently the checks were for construction by other business entities. There were also two checks to

United Jewelers which totaled $77.58, and a check made out to cash, endorsed by Kroger, which was purported to be for a lawnmower. Out of approximately $12,000.00 invested by Bush and Felix, only a little over $3,000.00 was actually spent on rental equipment.

Eventually, Bush had a falling out with the appellant and Clausing. The appellant told Bush that Air Base Mini-Rental and Air Base Mini Storage were to be merged. Clausing resisted the merger and was ousted from the company; later, the appellant returned Bush's money to him.

The appellant commingled the various investment funds and treated them as his own without regard to the best interests of the investors. John Mallet invested $6,150.00 in Square One Mini Storage on November 1, 1982, and his check was deposited in Square One's checking account. On November 22, 1982, $6,000.00 was withdrawn from Square One's account; on the same day $6,000.00 was placed into the account of M & R R.V. and Boat Storage, which at one time was owned entirely by the appellant and his wife. Again, on the same day, $6,000.00 was withdrawn from M & R's account and $6,000.00 was placed into Diversified Land's account.

When Mallet purchased his interest in Square One, he was told that the total capital contribution was $164,000.00 and that his money was to be used to complete a new storage building. When Mallet later discovered that he was the only investor, he confronted the appellant and was told that his money had been used in the construction of another building. The appellant offered him a five percent interest in Air Base Mini Storage, without regard to the effect this would have on Air Base's previous investors.

We are not persuaded by the appellant's defense that he was juggling the accounts because of the effect a bounced check for $5,000.00 had on the business entities. If this was true, it would not have been necessary for the appellant to run the $6,000.00 through four different accounts. Furthermore, reconciling conflicts in the testimony and weighing the evidence are within the province of the jury, and it is the jury's prerogative to accept such portions of the testimony which it believes to be true and discard that deemed false. *Vasquez* v. *State*, 287 Ark. 468,

701 S.W.2d 357 (1985), *reh'g denied*, 287 Ark. 473A, 702 S.W.2d 411 (1986).

It is the appellant's contention that, since the investors either got their money back or received property in lieu of cash, the State failed to prove that the investors were "deprived" of their property. In addition to voluntary refunds and settlements, there was evidence that several investors had been reimbursed after filing lawsuits which either were concluded or settled out of court. "Deprived" is defined in Ark. Stat. Ann. § 41-2201(4) (Repl. 1977) [Ark. Code Ann. § 5-36-101(4) (1987)] as follows:

> (a) to withhold property or to cause it to be withheld either permanently or under circumstances such that a major portion of its economic value, use, or benefit is appropriated to the actor or lost to the owner; or
>
> . . .
>
> (c) to dispose of property or use it or transfer any interest in it under circumstances that make its restoration unlikely.

The evidence clearly establishes that the appellant did not use the funds he received from the investors for the purposes represented to them. Consequently, the investors were deprived of the use and benefit of their property. *See Hixson* v. *State*, 266 Ark. 778, 587 S.W.2d 70 (Ark. App. 1979), *cert. denied*, 444 U.S. 1079 (1980). We hold that there was sufficient evidence to support the verdict as to Counts I and III.

## THE TESTIMONY CONCERNING AN INJUNCTION

The appellant next argues that the trial court erred in allowing Nancy Jones, Assistant Securities Commissioner, to testify about an injunction issued against the appellant in an unrelated case. An order entered in February 1973 temporarily enjoined the appellant and others acting in concert with him from offering or selling securities within the State of Arkansas. In July 1974 an order was entered continuing the injunction. In a 1985 action to which the Commission was not a party, the chancellor found that the injunction had expired.

At trial, Ms. Jones testified that, had the department known that the appellant was involved in the 1979 exemption request, the department would not have allowed the exemption because

the department had participated in and was aware of the earlier injunction proceeding against him. The appellant argues on appeal that this statement was irrelevant and prejudicial. We disagree.

Arkansas Rules of Evidence Rule 404(b) provides:

> Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show that he acted in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident.

In *Smith* v. *State*, 266 Ark. 861, 587 S.W.2d 50 (Ark. App. 1979), *cert. denied* 445 U.S. 905 (1979), we stated that evidence of other prior or similar transactions involving the offer and sale of securities is admissible to show habit, practice, or a common scheme, plan, and course of conduct, provided that the previous conduct is not too remote in time from the offense charged and is similar in nature to the offense charged. Remoteness is addressed to the sound discretion of the trial judge, whose determination will be reversed on appeal only when it is clear that the questioned evidence has no connection with the case. *Id.* The evidence in question was highly relevant to show the appellant's intent to defraud and, in light of the appellant's assertions that his actions were the result of his being a "bad businessman," to show lack of mistake.

Even if we were to find that the testimony was erroneously admitted into evidence, we would not reverse. This court will not reverse on the basis of nonprejudicial error. *Hughes* v. *State*, 17 Ark. App. 34, 702 S.W.2d 817 (1985). In light of the trial court's restriction of Jones's testimony concerning the injunction, the appellant's refusal of the trial court's offer to admonish the jury, and the presentation of other testimony about the injunction by the appellant, we fail to see any prejudice.

## JURY INSTRUCTIONS

The appellant makes several arguments regarding various instructions given to the jury by the court, and several instructions offered by the appellant and refused by the court. We note at the outset that there are no model instructions in the

AMCI for securities fraud. In determining whether the trial court erred in refusing an instruction in a criminal case, the test is whether the omission infects the entire trial so that the resulting conviction violates due process. *Conley* v. *State*, 270 Ark. 886, 607 S.W.2d 328 (1980). Just because an offered instruction contains a correct statement of the law does not mean that it is error for a trial court to refuse to give it. *Id.*

The first instruction that the appellant contends was erroneously given is the court's instruction number 10. This instruction tracks the language found in the Arkansas Securities Act, states the purpose of the Act, and discusses generally disclosures, registration, and exemptions. The last paragraph states:

> The anti-fraud provisions of the Arkansas Securities Act, which is charged to have been violated in this case, have the purpose of controlling and remeding [sic] schemes to defraud. The particular section of the law charged in this case was designed to protect the investors by requiring full and truthful disclosures of important facts regarding the character of a security and to prevent investors from being victimized by fraud.

The instruction proffered by the appellant is nearly identical with the exception of language added to the end which states "the Act does not authorize the Arkansas Securities Department to pass upon the merits of the securities' proposal to be offered." However, this language, which the appellant wishes to add, is misleading. The "confidential memorandum" which was received by Clausing and Brechtel was filed by the appellant with his request for an *exemption*. Although Ark. Stat. Ann. § 67-1251 (Repl. 1980) [Ark. Code Ann. § 23-42-212 (1987)] states that registration of a security does not indicate that the Commission has made any recommendation or passed on the merits of the security, Ark. Stat. Ann. § 67-1248(c) (Repl. 1980) [§ 23-42-505(a)] does authorize the Commissioner to deny or revoke any *exemption*.

The appellant next argues about an instruction regarding the alleged fraud in the offer and sale of the securities. The court instructed:

Roy Hardcastle is charged with the offense of securities fraud in the offer, sale, or purchase of Founder's Development stock as charged in Count I. To sustain this charge the State must prove beyond a reasonable doubt that Roy Hardcastle knowingly violated Section I of the Arkansas Securities Act which provides:

It is unlawful for any person, in connection with the offer, sale or purchase of an security to directly or indirectly—

(1) to employ any device, scheme or artifice to defraud, or

(2) to make any untrue statement of a material fact or to omit to state a material fact necessary in order to make the statements made in light of the circumstances under which they are made, not misleading, or

(3) to engage in any act, practice, or course of business which operates or would operate as a fraud or deceit on any person.

The court then instructed the jury on the definition of "knowingly" as found in AMCI 2203-P. It is the appellant's contention that the phrase "that the defendant acted knowingly and with the intent to defraud," should have been included in the instruction.

The instruction given by the court essentially tracks the statute, Ark. Stat. Ann. § 67-1235 (Repl. 1980) [Ark. Code Ann. § 23-42-507 (1987)]. This section does not specify any intent necessary for conviction of the crime of securities fraud. If the statute defining an offense does not describe a culpable mental state, culpability is nonetheless required and is established if a person acts purposely, knowingly, or recklessly. *See Martin* v. *State*, 261 Ark. 80, 547 S.W.2d 81 (1977). Arkansas Statutes Annotated § 67-1255(a) (Repl. 1980) [Ark. Code Ann. § 23-42-104(a) (1987)] provides:

Any person who knowingly violates Section 1 [§ 67-1235] of this Act [§§ 67-1235-67-1262] shall be guilty of the offense of "securities fraud".

"Knowingly" shall be defined as set forth in the Arkansas Criminal Code. Ark. Stat. Ann. § 67-1255(j) (Repl. 1980) [Ark. Code Ann. § 23-42-104(f) (1987)]. Furthermore, fraud is not limited to common-law deceit under the Act. Ark. Stat. Ann. §

67-1247(d) (Repl. 1980) [Ark. Code Ann. § 23-42-102(4) (1987)]. We find that the instruction given was adequate, a correct statement of the law, and fully covered the requisite mental state of the appellant. *Blaney* v. *State*, 280 Ark. 253, 657 S.W.2d 531 (1983).

## SEVERANCE OF COUNTS I AND III

The appellant contends that Counts I and III are unrelated; that the facts were not connected; and that it was prejudicial for the trial court to deny his motion to sever. We disagree.

When offenses are based on the same conduct or on a series of acts connected together or constituting parts of a single plan or scheme, they may be joined for trial, but the decision to join or sever offenses is within the discretion of the trial court, and the appellate court will not reverse absent an abuse of discretion. *Rubio* v. *State*, 18 Ark. App. 277, 715 S.W.2d 214 (1986); A.R.Cr.P. Rule 21.1(b). The offense alleged in Count I was the use of false and misleading statements to procure the sales of the securities. Clausing and Brechtel and their involvement with Founder's were the basis of the charge in Count I, and they were also listed as victims in Count III. The charges in Count III resulted from the appellant's commingling of bank accounts that belonged to Founder's as well as to the business entities in Count III. We find no abuse of discretion and affirm the trial court's finding that the acts involved constituted a continuing course of conduct. A.R.Cr.P. Rule 21.1(b).

## THE MOTION TO DISMISS

The appellant argues that the trial court erred in refusing to dismiss the charges in Count III because the felony information did not describe an offense, and because the alleged acts of theft were security transactions.

An information is not defective if it "sufficiently apprises the individual of the specific crime with which he is charged to the extent necessary to enable him to prepare for his defense." *Richard* v. *State*, 286 Ark. 410, 413, 691 S.W.2d 872 (1985). An information will not be affected by any defect which does not tend to prejudice the substantial rights of the defendant on the merits. *Drew* v. *State*, 8 Ark. App. 120, 648 S.W.2d 836

(1983).

The appellant's attack on the information is merely an exercise in semantics. The information stated that the appellant, "through on or about the 31st day of December, 1983, did with the purpose of depriving the true owners of their property, take unauthorized control over property of a value in excess of $2,500.00, by deception, such being the property of another." It is the appellant's argument that the words "by deception" should have been deleted from the information.

 The appellant received both a bill of particulars and a supplemental bill of particulars. The appellant's attorney stated that he did not object to the content of the information, and that his objection was "legal." We simply fail to discern any prejudice to the appellant because the prosecutor included additional language which more fully described the offense.

 The appellant also argues that the trial court should have dismissed the information because the "facts" described a securities transaction and not theft of property. We find no error because there is no provision in our law which permits a criminal charge to be dismissed, prior to trial, because the facts that *may* be presented do not amount to criminal conduct, although a case may be dismissed if the charge does not state a criminal offense under the law. *State* v. *Jamison*, 277 Ark. 349, 641 S.W.2d 719 (1982). The jury was the factfinder, and, until the evidence had been presented to them, there was no basis to dismiss the information for the reason the appellant argues.

## DELAY BY PROSECUTOR IN FILING THE INFORMATION

The Securities Commission began an investigation of the appellant in April 1982. The first felony information was filed on February 14, 1985, and the amended information was filed on July 18, 1985. In 1984, the appellant defended several civil actions involving the same transactions which are at issue in this case. The appellant contends that the three-year-period between the initiation of the investigation by the Commission and the filing of the information was an unreasonable delay.

In April 1982, the Commission appointed Steve Bennett to investigate these cases. He testified that he did little with the case

and that he left the Commission in June 1983. Nancy Jones was appointed to investigate in October 1983. She testified that her investigation did not begin as a criminal investigation and that she did not remember when the investigation became a criminal one. She testified further that the Commission does not have the authority to prosecute, and that once it was determined that criminal acts had taken place, the case was referred to the prosecuting attorney's office.

▮ The prosecution cannot delay the filing of charges in order to gain a tactical advantage over the accused. *Bliss* v. *State,* 282 Ark. 315, 668 S.W.2d 936 (1984). Furthermore, the prosecution cannot delay if the delay causes substantial prejudice to the appellant's right to a fair trial. *United States* v. *Marion,* 404 U.S. 307 (1971). However, a prosecutor may delay action until he is satisfied that the charges should be brought and can be proven. *United States* v. *Lovasco,* 431 U.S. 783 (1977).

The only prejudice alleged by the appellant is that his resources were exhausted from the defense of the civil actions, and thus he was not "at his best" to defend the criminal action. We think that the delay in filing this complicated case has been sufficiently explained, that the prosecution neither sought nor obtained any tactical advantage, and that there was no prejudice to the appellant.

## THE TRANSFER OF THE CASE

This case was originally assigned to the Pulaski County Circuit Court, First Division. On motion of the prosecutor the case was transferred to the Fifth Division. The reason given was that the prosecutor, Jim Neal, had been transferred to Fifth Division. The appellant objected, stating that he did not think that Mr. Neal was going to actually try the case because of a conflict of interest, and that the transfer would cause another delay. The trial judge stated that he was granting the transfer because the lawyers were being frequently changed, that the parties had hesitated and delayed, that too much time had been spent on the case already, and that they should "get somebody that understands it and knows what they're doing."

The appellant alleges that he was prejudiced because the transfer caused unreasonable delay. The trial in First Division

was scheduled to begin in December 1985. The trial began in Fifth Division on June 30, 1986, which was, as the State points out, within the eighteen months mandated by Arkansas law on speedy trials. A.R.Cr.P. Rule 28.1.

The appellant, although stating that the delay prejudiced him, does not state specifically how he was prejudiced, and this Court will not reverse because of an alleged error unless actual prejudice is shown. *Hughes* v. *State*, 17 Ark. App. 34, 702 S.W.2d 817 (1985), *reh'g denied*, 17 Ark. App. 37-A, 705 S.W.2d 455 (1986). Furthermore, from the remarks in the record, the trial judge was obviously frustrated with the delays and felt that a transfer would expedite matters.

The appellant also argues that the transfer violated his fifth, sixth, and fourteenth amendment rights to a fair and speedy trial. However, the appellant did not offer an objection to the trial court based on these constitutional rights, and we will not address issues raised for the first time on appeal. *Wilson* v. *State*, 272 Ark. 361, 614 S.W.2d 663 (1981).

## EXCLUSION OF A VENIREMAN

During jury selection, one of the potential jury members told the trial court that she would have a problem considering the full range of penalties because she "knew some people who had been there" (in prison). After continued questioning by the court and the prosecutor, the potential juror again stated that she did not know if she could consider the full sentencing range provided by Arkansas law for the offenses with which the appellant was charged. She was stricken for cause, and the appellant argues that the court erred in doing so.

The question of a juror's qualifications lies within the sound discretion of the trial judge. *Miller* v. *State*, 8 Ark. App. 165, 649 S.W.2d 407 (1983). It is proper to excuse for cause a juror who cannot consider the possible range of sentences. *Allen* v. *State*, 281 Ark. 1, 660 S.W.2d 922 (1983), *cert. denied*, 472 U.S. 1019 (1985). We find no abuse of discretion in excluding this juror for cause.

## MOTION FOR A NEW TRIAL

The appellant's last argument is that the trial court erred in

denying his motion for a new trial. During the trial, one of the jurors was seen talking to an attorney who represented an insurance company against which the appellant had filed a claim. The appellant states that the insurance claim was related to his criminal case. However, the appellant concedes that there was no harm, and asserts only that it created a prejudicial situation. Because the appellant withdrew the argument in his reply brief and because he concedes that there was no harm, we will not address this argument.

We reverse and dismiss the appellant's conviction for filing false and misleading statements with the Commission because the charges were brought beyond the statute of limitations; the appellant's convictions for securities fraud and theft of property are affirmed.

Affirmed in part and reversed and dismissed in part.

CORBIN, C.J., and CRACRAFT, J., agree.